UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TONYA KAY WHITE, | NO. C13-5238-TSZ-JPD |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Tonya Kay White appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be reversed and remanded for further proceedings.

I.   FACTS AND PROCEDURAL HISTORY

At the time of her administrative hearing, plaintiff was a 38 year-old woman with a high school education. Administrative Record ("AR") at 53-54. Her past work experience includes employment as a cook, waitress, bartender, cashier and stock clerk. AR at 40. Plaintiff was last gainfully employed in November 2009. AR at 55.

REPORT AND RECOMMENDATION - 1

On July 7, 2011, plaintiff filed a claim for SSI and for DIB, alleging an onset date of November 2011. AR at 27. Plaintiff's claim was denied. She subsequently filed the current claim, also alleging an onset date of November 2011. However, in light of the prior denial, the ALJ determined that the relevant time period for this claim was March 12, 2011 to the present. AR at 27. Plaintiff asserts that she is disabled due to major depressive disorder, borderline personality disorder traits, obesity, lumbar spondylosis, and probable lumbar facetogenic pain. AR at 29.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 27. Plaintiff requested a hearing which took place on October 26, 2012. AR at 49-90. On November 27, 2012, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 27-42. Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-4, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). Plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. No. 7.

## II.   JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

REPORT AND RECOMMENDATION - 2

*Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

### IV. EVALUATING DISABILITY

As the claimant, Ms. White bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments

REPORT AND RECOMMENDATION - 3

are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION - 4

residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

On November 27, 2012, the ALJ issued a decision finding the following:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2. The claimant has not engaged in substantial gainful activity during the relevant period.

3. The claimant has the following severe impairments: major depressive disorder, borderline personality disorder traits, obesity, lumbar spondylosis, probable lumbar facetogenic pain.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) subject to the following limitations: the claimant can perform work that does not require standing for more than 2 hours at a time or 4 hours during the day total. The claimant can perform work that does not require any climbing of ladders, ropes, or scaffolds and that does not require more than frequent kneeling or crawling, nor work that requires more than occasional balancing, stooping, crouching, or climbing of ramps or stairs. The claimant can perform work that does not require

REPORT AND RECOMMENDATION - 5

concentrated exposure to extreme heat, humidity, vibration, or hazards such as unprotected heights or open machinery. The claimant can perform work that consists of simple routine tasks, that does not require public contact or more than superficial coworker contact, and that does not require changes in the work setting or work processes.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on XXXXX, 1974 and was 35 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.[2]

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 12, 2011, through the date of this decision.

AR at 29-42.

## VI. ISSUES ON APPEAL

The principal issues on appeal are:

1. Did the ALJ's RFC finding of an ability of the claimant to perform work at the light exertional level conflict with the statutory definition of an ability to work at the light exertional level?

2. Did the ALJ violate SSR 96-8p and commit reversible error in failing to provide valid reasons for rejection of treating source opinions that directly conflict with the ALJ's RFC finding?

3. Did the ALJ reject the lay witness evidence for impermissible reasons?

4. Did the ALJ fail to consider whether claimant's chronic pain was a severe impairment causing a debilitating effect on the claimant's ability to work?

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 6

5. Is the credibility assessment by the ALJ not supported in the record?

6. Are the light exertional jobs identified by the VE in response to the hypothetical questions posed by the ALJ inconsistent with the definition of light work in the DOT and the regulations?

Dkt. No. 18 at 1-2.

## VII. DISCUSSION

Two issues are dispositive in this appeal, and require remand for further proceedings. First, the ALJ failed to evaluate the medical evidence properly. Second, the ALJ erred in assessing some of the lay witness testimony. Because these errors taint the remaining findings, this case should be remanded for a *de novo* hearing.

### *1. Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22

(9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

        2.     *Errors in Evaluating the Medical Evidence*

The ALJ *failed* to consider the opinion of Andre Tapp, M.D. (AR at 406-09), an examining psychiatrist, who diagnosed plaintiff with major depressive disorder in November 2010. Dr. Tapp concluded plaintiff had moderate restrictions performing more complex tasks; moderate limitations in dealing with instructions and interactions with coworkers and the public; moderate limitations on performing work activities on a consistent basis without special or additional instructions; marked limitations in the ability to maintain regular attendance in

REPORT AND RECOMMENDATION - 8

the workplace and complete a normal workday or workweek; and moderate limitations in the ability to deal with the usual stress encountered in the workplace. AR at 408-09.

The Commissioner argues that the error in this regard is harmless, because the opinion is similar to that of Dr. Lemberg, whose opinion was reviewed and was assigned "little weight." AR at 37. There are three problems with the Commissioner's argument. First, it cannot be said that the opinion of Dr. Tapp is the same as that of Dr. Lemberg. Hence, because the ALJ did not provide any analysis of Dr. Tapp's opinions, the Court must remand this for further proceedings. Second, any similarity between the two opinions would be reason to provide more weight to the two opinions, rather than simply dismissing them, particularly when the ALJ is otherwise left with opinions of physicians who never saw plaintiff. This flies in the face of the *Orn* standards for evaluating medical evidence. Finally, the ALJ erred in his evaluation of the opinions of Dr. Lemberg.

The ALJ assigned "little weight" to Dr. Lemberg's opinions providing the following rationale:

> Much of this opinion was apparently formed by the claimant's reports, which are not entirely credible. Dr. Lemberg had only a single opportunity to directly examine the claimant, and while her opinions were partly based on her finding from the examination, they reflect only a snapshot of the claimant's functioning. Moreover, subsequent treatment notes demonstrate that the claimant's limitations during the consultative examination were short-lived, and Dr. Lemberg's opinions were based on the claimant's unreliable and subjective presentation.

AR at 37.

Dr. Lemberg conducted a comprehensive psychiatric evaluation in September 2011. (AR at 551-58). This was nearly 10 months after Dr. Tapp's evaluation. Dr. Lemberg set out the basis for all of her findings. This is not a mere check-the-box form. Despite the comprehensive nature of the report, the ALJ dismissed it in cursory fashion. It is true that Dr.

Lemberg had only a "single opportunity" to evaluate plaintiff, but this says nothing. If this was a valid reason for discounting an evaluating psychiatrist's report, then it would mean in many cases, *Orn* and its medical hierarchy means nothing. Additionally, this also highlights the significance of Dr. Tapp's ignored report and evaluation. Finally, it suggests that the ALJ finds it easy to discount an examining physician's report, while relying completely on the opinion of a physician who has not seen plaintiff. Again, this is difficult to square with the holdings in *Orn*.

Moreover, the ALJ makes the assertion, unsupported by any specifics, that plaintiff's limitations were "short-lived," suggesting that they were outliers. However, this bald assertion conveniently ignores the forgotten report of Dr. Tapp, nearly 10 months earlier. The ALJ erred by neglecting Dr. Tapp's opinions and in his assessment of Dr. Lemberg's opinions.

Because this matter is being remanded for further proceedings, the ALJ should also properly evaluate the opinions of Neal Shonnard, M.D. Dr. Shonnard treated and evaluated plaintiff in connection with her worker's compensation case. The ALJ made reference to materials contained in Exhibit 16 F. AR at 34. Exhibit 16 F is a lengthy exhibit, consisting of nearly 700 pages. However, contained in that exhibit are examination findings of Dr. Shonnard (AR at 671-73) who diagnosed her with congenital spondylosis, lumbosacral region, and lumbar back strain. Clinical examination revealed about 50% diminished lumbar range of motion and 0/5 Waddell's signs, and annular fissure at L4-5. Because this matter is being remanded, the ALJ should include a specific review of Dr. Shonnard's findings as well. The ALJ made no specific reference to the opinions of Dr. Shonnard. On remand, the ALJ should do so.

      *3.*  *On Remand, the ALJ Should Also Reevaluate the Lay Witness Testimony*

  The ALJ separately considered the statements of five lay witnesses.  In order to determine whether a claimant is disabled, an ALJ may consider lay-witness sources, such as testimony by nurse practitioners, physicians' assistants, and counselors, as well as "non-medical" sources, such as spouses, parents, siblings, and friends.  *See* 20 C.F.R. § 404.1513(d).  Such testimony regarding a claimant's symptoms or how an impairment affects his/her ability to work is competent evidence, and cannot be disregarded without comment.  *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993).  This is particularly true for such non-acceptable medical sources as nurses and medical assistants.  *See* Social Security Ruling ("SSR") 06-03p (noting that because such persons "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists," their opinions "should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.").  If an ALJ chooses to discount testimony of a lay witness, he must provide "reasons that are germane to each witness," and may not simply categorically discredit the testimony.  *Dodrill,* 12 F.3d at 919.

  Plaintiff argues that the reasons provided by the ALJ were not germane, because they were premised on finding the claimant not credible, and that their observations were not consistent with other evidence in the record.  The Commissioner disagrees and argues that the reasons given were germane.  Here, the Court agrees with the plaintiff.  First, the statements may, in fact, be consistent with the medical record upon reevaluation.  Second, the ALJ discounted these statements apparently largely on the one-sentence statement of Dr. Hoskins, a physician who never saw plaintiff.  AR at 119.  It is not clear, and certainly not pointed out by the Commissioner, the basis for Dr. Hoskins' conclusion that plaintiff could, for example,

REPORT AND RECOMMENDATION - 11

stand or walk for 4 hours in an 8 hour day, which was the basis proffered to reject some of the lay witness statements.

Finally, there are also opinions of chiropractors who have been long treating professionals of plaintiff. Although they are not deemed "acceptable medical sources," *Dodrill* requires that they not be disregarded without comment. This requires further reevaluation by the ALJ.

## VIII.   CONCLUSION

Because the ALJ erred in his analysis of the medical and lay witness evidence, this case must be remanded for a *de novo* hearing, as these errors impact the remaining findings. For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions. A proposed order accompanies this Report and Recommendation.

DATED this 20th day of November, 2013.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge